IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DEMETRIUS L. COOPER,

     Plaintiff,
 v.

ALLISON McGOWAN, KHRYSTYNA ROSENAU,
PATRICK GORMAN, MICHAEL BRITTEN,
NATHAN SANCHEZ, TERANCE LASH, and
KYLE TRITT,

     Defendants.

OPINION & ORDER

17-cv-383-jdp

---

Pro se plaintiff Demetrius L. Cooper is currently incarcerated at the Waupun Correctional Institution (WCI). I previously granted him leave to proceed on deliberate indifference, conditions-of-confinement, and retaliation claims against defendant WCI officials concerning their refusal to place Cooper in clinical observation status and subsequent retaliatory acts. Dkt. 9 and Dkt. 14. Several motions are before the court, including Cooper's motion for partial summary judgment and defendants' motion for partial summary judgment for failure to exhaust administrative remedies. Both summary judgment motions focus on Cooper's claims against defendant Kyle Tritt, a WCI captain who allegedly refused to provide Cooper with an extra pillow necessary to treat Cooper's gastroesophageal reflux disease. I will begin by reciting the undisputed facts material to the summary judgment motions, which provide a useful background to the remaining motions. I will deny all of the pending motions, save one, for the reasons explained below.

UNDISPUTED FACTS

I begin by noting deficiencies in defendants' summary judgment response. Defendants purport to dispute some of Cooper's proposed facts by stating that they have "not had an opportunity to depose him regarding this allegation." *See, e.g.*, Dkt. 73, ¶ 36. Defendants had an opportunity to conduct discovery before responding to Cooper's summary judgment motion; their failure to depose Cooper is not a valid basis to dispute a proposed fact. As explained in the preliminary pretrial conference order, I "will conclude that a proposed fact is undisputed unless the responding party explicitly disputes it and either identifies contradictory evidence in the record, or demonstrates that the proponent of the fact does not have admissible evidence to support it." Dkt. 57, at 17. So any fact proposed by Cooper that is opposed only on the basis that defendants have not deposed him will be deemed to be undisputed.

The following facts are undisputed except where noted.

Cooper has severe gastroesophageal reflux disease (GERD). His symptoms include chest pain and vomiting. During his incarceration, he has been treating his symptoms with prescription and over-the-counter medication. In December 2016, the WCI special needs committee approved a "restriction" for an extra pillow so that Cooper could elevate his head while in bed to treat his GERD. Dkt. 38-1, at 11, 12. Cooper says that he wanted the pillow to prevent him from choking on his vomit at night, but there is no evidence that the special needs committee approved the pillow for that specific purpose rather than to offer more general relief from the symptoms of GERD. Cooper was given an extra pillow, which he kept in his cell. His WCI paperwork reflected that he was to be allowed an extra pillow "to elevate head of bed for GERD." Dkt. 66-1, at 1.

In May 2017, Cooper filed this lawsuit against several WCI officials, including defendant WCI captain Kyle Tritt. In his complaint, he asserted claims concerning defendants' alleged failure to respond appropriately to Cooper's serious mental health needs.

On July 17, 2017, Cooper was transferred to disciplinary segregation. Tritt oversees segregation at WCI. On July 19, Cooper wrote an "interview/information request" to Tritt with the following message:

> I need my pillow that was in my cell when I was packed up. I can choke. I have a medical restriction. Also, why am I not receiving my phone call I am allowed while on TLU? There were no phone list for today, I should have received my phone call.

Dkt. 38-1, at 15. The note was stamped as "received" on July 20. At some point, Tritt responded "I will look into it." *Id.* He didn't date his response, and at this point he doesn't remember when he wrote it.

On July 20, Cooper filed a grievance explaining that he was "approved a pillow for [his] medical needs" but had "been refused [a] pillow" upon transfer to segregation and that Tritt had "ignored" Cooper's written request for a pillow. Dkt. 67-2, at 8. The institution complaint examiner received Cooper's grievance on July 24 and rejected it as moot two days later, explaining, "Capt Tritt stated that he did not get a request regarding the pillow until 7.25.17 and stated inmate was given an extra blanket in place of the extra pillow with the approval of HSU." *Id.* at 2. Two days after that, Cooper appealed the rejection to Brian Foster, the WCI warden, arguing that the issue was "not moot" because he still hadn't received a pillow or blanket. *Id.* at 10. Foster received the appeal on July 31 and issued a decision on August 4, confirming that the rejection was appropriate.

Meanwhile, according to Cooper, he asked Tritt why Tritt lied about giving Cooper an extra blanket or pillow; Tritt responded, "whether it's for your medical needs or not, I will not

3

provide you either. You should have thought of that before you filed a lawsuit on me." Dkt. 38, ¶ 29. According to Tritt, he never said anything to that effect, nor did he lie about the extra blanket—he does not remember what happened, but he believes that he "would have" reported to the institution complaint examiner what he was told by other WCI staff in segregation. Dkt. 66, ¶ 15.

On August 5, Cooper contacted the HSU, complaining of chest pain. He explained that he didn't have an extra pillow in his cell, that he was vomiting at night, and that he was concerned he would choke. HSU staff "reassured" him. Dkt. 38-1, at 25.

On August 6, Cooper wrote another interview/information request to Tritt, which included the following message:

> I still never received my pillow or extra blanket that you told the ICE dept you already gave me. I'm at risk to choke. When do you think I'm going to get it?

*Id.* at 21. Tritt responded, "You should have received it now." *Id.* Again, the response is undated.

Also on August 6, Cooper filed another grievance, complaining that Tritt was "retaliating against [Cooper] because [Cooper] filed a lawsuit." *Id.* at 22. In the grievance, Cooper accused Tritt of lying to the institution complaint examiner about when he received and responded to Cooper's July 19 interview/information request (Cooper said Tritt responded on July 20) and about giving an extra blanket to Cooper (Cooper said he still didn't have an extra blanket or pillow). On August 9, the institution complaint examiner refused to accept the grievance, stating, "I talked with Capt Tritt and he verified that you were given a blanket on 8/7. If this is not true let me know." *Id.* at 23. According to Cooper, Tritt didn't give him a blanket on August 7; again, Tritt says that he doesn't remember what happened, that he didn't

4

personally give Cooper a blanket, but that he "would have" reported to the institution complaint examiner what he was told by other WCI staff in segregation. Dkt. 66, ¶ 19.

The night of Saturday, August 19, Cooper "vomit[ed] acid and blood on [his] shirt and blanket." Dkt. 38, ¶ 35. He believes that this was the result of not having an extra pillow. Nurse Vick, a member of the HSU, noted that Cooper was to receive a "clean shirt" from "security," Dkt. 38-1, at 26, but he was not provided with clean clothes until Tuesday or with clean bedding until the following Saturday, in accordance with segregation policy. (Tritt says that segregation policy "does not in any way prevent inmates from receiving clean linens or receiving showers if circumstances warrant it," Dkt. 66, ¶ 21, but he does not dispute when Cooper received clean linens or clothing.)

The same night, Cooper wrote an interview/information request to Vick, stating,

> Nurse Vick, tonight you came to my cell and as you can see, I do not have the pillow per my medical restriction. Nor do I have any extra blanket as an alternative. As a result I continue to vomit and have to sleep in it because they refuse to give me a change of clothes. Although you stated you would ask them to provide me a change of clothes after seeing the vomit and blood they still refused. Is there something you can do to force them to honor my medical pillow?

Dkt. 38-1, at 27. On August 21, Vick responded by sending Cooper a copy of a standard memo concerning requests for new pillows or mattresses, which read,

> We have been notified that you are requesting a new pillow or mattress. If you feel that your pillow or mattress needs replacing then please notify your cell hall officers or sergeant. If extras are available and your need deemed appropriate, they will coordinate the exchange. HSU has nothing to do with getting pillows and mattresses exchanged or handed out. HSU only places the special needs for extra pillows if deemed medically necessary by the special needs committee or a medical provider.

*Id.* at 28.

5

In the early morning of August 28, Cooper experienced chest pain and vomiting again, and was seen by Vick. Again, he was not allowed to change his clothes or bedding right away.

The night of September 10, Cooper was seen by Vick for chest pain and shortness of breath. Vick noted that Cooper was "upset [that he didn't] have pillow that [he] has restriction for." *Id.* at 26. Vick advised him to "complain up chain of command." *Id.*

On September 15, Cooper was released from segregation, having never obtained an extra pillow or blanket.

ANALYSIS

**A. Cooper's motion to compel copies of medical records**

In September 2017, Cooper indicated that WCI officials would not let him use his legal loan to make copies of part of his medical record. Defendants' counsel instructed the WCI official in charge of the legal loan program to provide copies of the medical records Cooper requested and any other records he requested in the future, so I determined that a court order compelling access to the records was unnecessary. *See* Dkt. 44, at 3–4.

Now, Cooper has filed another motion to compel, contending that WCI officials are still barring him from using his legal loan to make copies of his medical record. Dkt. 58. Cooper is seeking to compel WCI officials to make copies using his legal loan, not to compel defendants' discovery responses, so I will construe his motion as one raising an access-to-the-courts issue. As I previously explained, Cooper has a right to meaningful access to the courts, including the ability to acquire copies of important exhibits. *See* Dkt. 20, at 3–4 (citing *Bounds v. Smith*, 430 U.S. 817, 823–25 (1977)).

Cooper points to evidence that he asked defendants to produce "PSU (psych) notes, progress notes while in observation," but defendants refused, objecting that the request was too vague. Dkt. 59-1, at 1. Defendants' counsel noted that Cooper could review and copy his psychological records on his own. So Cooper submitted a request for copies of two pages, to be paid for with legal loan funds. He noted that the reason for the request was "Case No. 17-cv-383, Western District." Dkt. 59-2. But his request was denied with the following explanation: "Not allowed without proof of need from court." *Id.* When Cooper objected, another WCI official explained to him,

> [Y]ou may not obtain copies of your [medical] files without showing proof of need from the courts. This is clearly listed in the legal loan policy 309.51.01. . . . Until you are able to provide a court document stating that you must obtain copies from your PSU record all request will be denied . . . .

Dkt. 59-5. The explanation Cooper received is supported by the legal loan policy, which states:

> Inmates may not use legal loan funds for copies of documents in their Health Care Records, except when an inmate can demonstrate a clear need for the records for the litigation for which the loan has been approved.

Dkt. 24-1, at 6.

It's unclear from these explanations exactly what constitutes sufficient proof of "clear need." Requiring a court order commanding WCI officials to make copies of the medical record would be unreasonable. But defendants explain that to meet the "clear need" requirement, Cooper need only submit a copy of the screening order for this case with his request for copies. The screening order makes clear that Cooper's claims concern mental health issues. I sympathize with Cooper's frustration, but it appears that Cooper may obtain copies of the records he seeks if he follows the proper procedure. Defendants' counsel indicates that Cooper may also obtain the records from counsel if he narrows his request—I agree that his original

7

request was too vague to allow for a response. Because it appears that Cooper has reasonable access to copies of his medical records, at least going forward, I will deny his motion to compel. And as there is no indication that Cooper needs copies of his psychological records to support or respond to any of the motions currently pending before the court, I will not delay my consideration of the remaining motions.

**B. Cooper's motion to compel defendants' discovery responses**

Cooper has also moved to compel defendants' responses to his discovery requests. Dkt. 60. Before turning to the discovery requests, I begin with Cooper's "motion for default judgment," in which he asks that I grant his motion to compel because defendants failed to respond by the deadline. Dkt. 77. An entry of default is made only "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Defendants are vigorously defending Cooper's claims in this suit, so default judgment would be inappropriate. If a party fails to respond to a motion by the deadline established by the court, it is sometimes appropriate to grant the motion as unopposed. But here, defendants *did* respond by the deadline. *See* Dkt. 70. So I will deny Cooper's motion for default judgment and address Cooper's motion to compel.

Three specific requests are at issue. First, Cooper contends that Tritt failed to respond to his first set of requests for admission. Defendants' counsel states in a declaration that he never received this first set of requests. Cooper points to evidence that he purchased a stamp to mail the requests to defendants' counsel, but that doesn't prove that counsel actually received the requests. Regardless, counsel has since sent Cooper Tritt's responses to Cooper's requests for admission, so there's no need to compel a response. Cooper asks for leave to supplement his summary judgment motion with these responses. Dkt. 81. I will grant him leave

8

to do so, and I will consider these responses when deciding Cooper's summary judgment motion.

Second, Cooper contends that when responding to Cooper's first set of interrogatories, Tritt lied in response to interrogatories no. 8 and 9 and "did not respond" to interrogatories no. 1 and 7. Dkt. 60, at 2. Beginning with interrogatories no. 8 and 9, Cooper can argue in his summary judgment briefing or at trial that Tritt is lying, but I will not compel Tritt to respond to Cooper's interrogatories in a certain way. As for interrogatories no. 1 and 7, Tritt *did* respond. *See* Dkt. 62, at 2, 4. Tritt acknowledges that the response to interrogatory no. 1 is incomplete and states that he will send Cooper a supplemental response, so there is no need for me to compel him to respond to interrogatory no. 1 at this point. But Tritt stands by his answer to interrogatory no. 7, which states:

> As attached as Exhibit 15 to Cooper's motion for Summary Judgment, isn't true that Cooper contacted you on 7-19-17 informing you he was at risk to choke and in need of his pillow authorized by health services?
>
> RESPONSE: Cooper did write a request dated July 19, 2017 stating he did not have a pillow.

Dkt. 62, at 4. Cooper complains that Tritt did not respond to the portion of the interrogatory concerning the risk of choking. That's true, but it is clear from the context of the question that Tritt admits in his response that Cooper wrote the July 19 interview/information request, which states in relevant part, "I need my pillow that was in my cell when I was packed up. I can choke." Dkt. 38-1, at 15. There is no need to compel Tritt to supplement his response to address the risk of choking, specifically—Tritt admits that Cooper wrote the note, and the contents of the note speak for themselves. So I will not compel Tritt to respond to this interrogatory, either.

9

Third, Cooper moves to compel defendants' responses to three requests for production of documents. But Cooper did not attempt to raise his concerns about these responses with defendants' counsel before filing his motion, as he is required to do under Federal Rule of Civil Procedure 33(a)(1). Defendants' counsel indicates that he will respond to Cooper's concerns. If Cooper continues to believe defendants' responses are incomplete, he may file another motion to compel at that time. I will deny Cooper's current motion to compel defendants' discovery responses.

## C. Cooper's motion to strike affirmative defenses

Cooper moves to strike three affirmative defenses in defendants' answer: failure to exhaust, qualified immunity, and sovereign immunity. Dkt. 86. Generally, motions to strike are disfavored because they potentially serve only to delay. *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). As the moving party, Cooper has the burden to show "that the 'challenged allegations are so unrelated to plaintiff's claim as to be devoid of merit, unworthy of consideration, and unduly prejudicial.'" *Kaufman v. McCaughtry*, No. 03-cv-27, 2003 WL 23095690, at *1 (W.D. Wis. May 22, 2003) (quoting *Carroll v. Chi. Transit Auth.*, No. 01-cv-8300, 2002 WL 206064, at *1 (N.D. Ill. Feb. 8, 2002)). A motion to strike should "not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense." *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991) (quoting *Glenside West Corp. v. Exxon Co.*, 761 F. Supp. 1100, 1115 (D.N.J. 1991)). Cooper has not met his burden, so I will deny his motion. This does not mean that these affirmative defenses are meritorious; it only means that defendants are not barred from raising these defenses during the litigation.

**D. Defendants' exhaustion motion**

Defendants move for partial summary judgment, contending that Cooper failed to exhaust his administrative remedies concerning Tritt's alleged refusal to provide a second pillow to Cooper when Cooper was transferred to segregation in July and August 2017. Dkt. 63.

Under the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). To satisfy the exhaustion requirement, a prisoner must "properly take each step within the administrative process," which includes filing grievances and appeals "in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024, 1025 (7th Cir. 2002). The State of Wisconsin requires prisoners to file a grievance within 14 calendar days after the occurrence giving rise to the complaint. Wis. Admin. Code § DOC 310.09(6).[1] Prisoners must appeal a rejected grievance within 10 calendar days of the rejection. § DOC 310.11(6). The exhaustion requirement is mandatory, *Woodford v. Ngo*, 548 U.S. 81, 85 (2006), and failure to exhaust requires dismissal of a prisoner's case. *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "[A] grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). Because exhaustion is an affirmative defense, defendants bear the burden of establishing that Cooper failed to exhaust his available remedies. *Jones v. Bock*, 549 U.S. 199, 216 (2007). At the summary judgment stage, they must show that there is no genuine

---

[1] A new version of Chapter DOC 310 went into effect on April 1, 2018. All citations are to the prior version of the administrative code, which was in effect at the time Cooper pursued administrative remedies.

dispute of material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Cooper filed a grievance about Tritt's refusal to supply him with an extra pillow. The grievance was rejected as moot. Cooper timely appealed the rejection as required by Wisconsin's administrative code. A grievance rejected on procedural grounds usually does not properly exhaust administrative remedies. But here, Cooper's grievance was rejected on the merits. Cooper did all he could to exhaust his administrative remedies. Thus, defendants have not established that he failed to exhaust his available remedies concerning his claims against Tritt based on Tritt's alleged refusal to give Cooper an extra pillow in segregation.

Defendants focus on a separate grievance that Cooper attempted to file on August 6. In the second grievance, Cooper accused Tritt of retaliating against him by lying to the institution complaint examiner about giving him a blanket; he also reiterated that he still didn't have an extra pillow or blanket. *See* Dkt. 67-3, at 2–3. The institution complaint examiner refused to accept this second grievance, stating, "I talked with Capt Tritt and he verified that you were given a blanket on 8/7. If this is not true let me know." *Id.* at 1. According to defendants, Cooper should have followed up with the institution complaint examiner; he failed to do so, and therefore he did not exhaust his administrative remedies. Cooper says that he *did* follow up with the institution complaint examiner, but she never responded. Defendants concede that this raises a factual dispute and "request that their exhaustion motion be denied without prejudice to refiling at the dispositive motion deadline." Dkt. 82, at 2. But the factual dispute is immaterial; Cooper properly exhausted his administrative remedies with his *first* grievance, so the outcome of the second grievance simply doesn't matter. I will deny defendants' motion for partial summary judgment.

Cooper argues that defendants have raised the factual dispute concerning the second grievance as a red herring in hopes of distracting attention from a frivolous motion. He moves for sanctions under Rule 11. Dkt. 76. Defendants' motion certainly was not meritorious, nor was it especially well thought-out. But "[a] court should not impose sanctions on a party that loses an argument, as long as the argument was not entirely groundless." *Philos Techs., Inc. v. Philos & D*, 802 F.3d 905, 917 (7th Cir. 2015). Here, defendants focused on an unaccepted grievance that they believed Cooper failed to follow up on. Their argument, while ultimately unpersuasive, was not entirely groundless. And once defendants learned of the factual dispute, they conceded that their motion should be denied. Thus, Rule 11 sanctions are not warranted.

Cooper also contends that sanctions are warranted because defendants lied in their filings. Dkt. 76 and Dkt. 93. First, he argues that Tritt lied about being unaware of Cooper's risk of choking. Cooper takes Tritt's statement that Tritt was unware of the risk of choking to mean that Tritt claims Cooper never told Tritt that Cooper could choke. But Tritt does not dispute that Cooper *told* him about the choking; he disputes *believing* Cooper. It's not for me, or Cooper, to say that Tritt is lying about his subjective belief. Second, Cooper argues that defendants lied about whether Cooper's extra pillow was supposed to follow him to segregation. Defendants' explanation of what was "supposed" to happen with the extra pillow has shifted over the course of the litigation—in February, they "disputed that the pillow actually should have followed him to [segregation, as] the Special Housing Summary states the extra pillow does not travel with inmate." Dkt. 65, ¶ 41. But by April, they reversed course and argued that WCI "staff are already trained that when an inmate with a medical restriction for an extra pillow is placed in [segregation], the pillow is routed directly to [segregation]." Dkt. 88, at 4. This apparent inconsistency doesn't help defendants' case, but each contention is supported

13

by some evidence, so Rule 11 sanctions are not warranted. I will deny Cooper's motions for sanctions.

**E. Cooper's partial summary judgment motion**

Finally, Cooper moves for summary judgment on his claims against Tritt concerning Tritt's refusal to provide him with an extra pillow when Cooper was transferred to segregation in July 2017. Dkt. 35. As noted above, summary judgment in Cooper's favor is proper if he establishes that there is no genuine dispute of material fact and that he is entitled to judgment as a matter of law.

I begin with Cooper's deliberate indifference claim. Cooper contends that Tritt's failure to supply him with an extra pillow (or an adequate substitute) violated his Eighth Amendment right to be free from cruel and unusual punishment. To prevail on this claim, Cooper must show that he has a serious medical need, that Tritt was aware of that need, and that Tritt was deliberately indifferent to it. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). Tritt concedes that GERD is a serious medical condition. He argues that Cooper didn't have a serious medical need for an extra pillow, but the evidence shows that the special needs committee allowed him an extra pillow because it was "medically necessary." Dkt. 38-1, at 28. WCI paperwork notes that Cooper was allowed an extra pillow to treat his GERD, Cooper told Tritt that fact in his very first interview/information request to Tritt, and Tritt never questioned whether Cooper actually needed the extra pillow, so no reasonable juror could find that Tritt was not aware of Cooper's serious medical need.

But Tritt has pointed to evidence sufficient to raise a genuine dispute about whether he was aware that Cooper's serious medical need was going unmet. Viewing the evidence in the light most favorable to Tritt, here's what happened: Around July 25, Tritt received a note from

14

Cooper asking for an extra pillow. Around the same time, the institution complaint examiner asked Tritt whether Cooper had been supplied an extra pillow. Tritt talked to a WCI staff member, believed that an extra blanket had been given to Cooper, and told the institution complaint examiner the same thing. On August 6 or 7, Tritt received a second note from Cooper and learned that Cooper never got the extra blanket. He tried to fix the mistake by instructing another WCI staff member to give an extra blanket to Cooper on August 7. On August 9, when the institution complaint examiner followed up with him, he explained that Cooper got the extra blanket on August 7. Unbeknownst to him, Cooper still didn't have the blanket. In sum, Tritt tried to promptly address Cooper's medical need and, when he learned that the need hadn't been addressed, he promptly attempted to rectify the problem. It turns out that he didn't succeed, but he didn't know that. Thus, a reasonable juror could find that Tritt was not deliberately indifferent to Cooper's serious medical need. *See Petties*, 836 F.3d at 728 ("even objective recklessness—failing to act in the face of an unjustifiably high risk that is so obvious that it *should* be known—is insufficient to make out a claim [of deliberate indifference]."). To be clear, a reasonable jury could also believe Cooper's version of the events. But because material facts are in dispute, I will deny Cooper's motion for summary judgment on his deliberate indifference claim.

The same factual disputes preclude entry of summary judgment on Cooper's remaining claims. Cooper's conditions-of-confinement claim also requires proof of deliberate indifference. *See Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 664–64 (7th Cir. 2012). And to prevail on his First Amendment retaliation claim, Cooper must prove, among other things, that Tritt's harmful actions were motivated by Cooper's filing of this lawsuit. *See Massey v.* Johnson, 457 F.3d 711, 716 (7th Cir. 2006). Under Tritt's version of the events, he meant Cooper no harm;

his only motivation was to ensure that Cooper received an extra pillow or blanket. So I will deny Cooper's motion for partial summary judgment.

**F. Cooper's motion for a preliminary injunction**

Cooper moves for a preliminary injunction requiring WCI officials to allow him to take medically necessary items, such as an extra pillow, with him to segregation. Dkt. 87. As I have previously explained to Cooper, to obtain a preliminary injunction, Cooper must clearly show that (1) he will suffer irreparable harm before the final resolution of his claim without a preliminary injunction; (2) traditional legal remedies are inadequate; and (3) his claims have some likelihood of success on the merits. Dkt. 44, at 2.

Cooper's claims have some likelihood of success on the merits, but Cooper has not demonstrated that he will suffer irreparable harm without a preliminary injunction. Cooper says he needs an extra pillow to prevent him from choking. It's true that choking, with its attendant risk of death, would qualify as irreparable harm. But there's no medical evidence that an extra pillow truly prevents Cooper from choking, rather than merely helping reduce Cooper's GERD symptoms so that Cooper may sleep more comfortably. Because Cooper hasn't shown that he's at risk of choking or that an extra pillow alleviates that risk, I will deny Cooper's motion for a preliminary injunction.

**G. Cooper's motions for assistance in recruiting counsel**

On March 14 and 15, Cooper sent two letters to the court asking for assistance recruiting counsel. Dkt. 79 and Dkt. 80. As I have previously explained to Cooper, this court generally requires a pro se plaintiff to demonstrate that his is one of those relatively few cases in which it appears from the record that the legal and factually difficulty of the case exceeds his demonstrated ability to prosecute it. *See* Dkt. 9, at 7. Cooper contends that he needs a

lawyer because of his difficulties in conducting discovery, as evidenced by his motions to compel. But Cooper has shown that he is capable of conducting discovery. He doesn't need a lawyer to follow WCI's policy for obtaining copies of medical records with a legal loan, for example. So I will deny his motion without prejudice to his renewing it later on.

Cooper also complains in his letters that he has been sent to segregation, where he is only able to access the law library one hour per week. He also complains that the law library's computers have broken and that "the books are missing 90% of the pages." Dkt. 79. These are not reasons to recruit counsel, but they do raise questions about whether Cooper's right of access to the courts is being infringed. As the U.S. Supreme Court has explained, "the fundamental constitutional right of access to courts requires prison authorities to assist inmates in preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828. So I will instruct defendants to explain whether Cooper has adequate access to the law library or legal materials while in segregation. I will allow Cooper the opportunity to reply to defendants' response.

## ORDER

IT IS ORDERED that:

1. Plaintiff's motions to compel, Dkt. 58 and Dkt. 60, are DENIED.

2. Plaintiff's motion for default judgment, Dkt. 77, is DENIED.

3. Plaintiff's motion to supplement his summary judgment motion, Dkt. 81, is GRANTED.

4. Plaintiff's motion to strike affirmative defenses, Dkt. 86, is DENIED.

5. Defendants' motion for partial summary judgment for failure to exhaust administrative remedies, Dkt. 63, is DENIED.

6. Plaintiff's motions for sanctions, Dkt. 76 and Dkt. 93, are DENIED.

7. Plaintiff's motion for partial summary judgment, Dkt. 35, is DENIED.

8. Plaintiff Demetrius L. Cooper's motion for preliminary injunction, Dkt. 87, is DENIED.

9. Plaintiff's motions for assistance recruiting counsel, Dkt. 79 and Dkt. 80, are DENIED.

10. By May 29, 2018, defendants must explain whether plaintiff has adequate access to the law library or legal materials while in segregation. Plaintiff may file a response by June 8, 2018.

Entered May 15, 2018.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge